UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JASON WALOWSKI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: 12-1081 |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

This matter is now before the Court on Defendant, Walmart Stores East, LP's ("Wal-Mart") Motion for Summary Judgment [25]. This matter has been fully briefed. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

### STATEMENT OF FACTS[1]

Jason Walowski ("Walowski") began working at Wal-Mart in Princeton, Illinois as a part-time stocker when he was sixteen years old. In 2001, Wal-Mart transferred Walowski to the Distribution Center where he worked as an hourly associate and an hourly supervisor. In 2004, Wal-Mart promoted Walowski into a salaried leadership trainee position and in January 2005, promoted Walowski to Area Manager position. The duties of area managers included ensuring a safe work environment, attending all required Distribution Center meetings, encouraging and facilitating use of the Open Door policy by all associates, and ensuring that goals are met and exceeded in the areas of safety, quality, productivity, and people measurements.

---

[1] The Court notes that Plaintiff responded with a blanket denial to the many of Defendant's Undisputed Material Facts because Defendant failed to attach documentary support. In many instances, Plaintiff references Walowski's performance review even when the specific fact is not related to a performance review. As Plaintiff did not move to amend his response after Defendant filed the necessary documents, any denials that reference a review, when the review is not the document in question, are deemed undisputed and any denials based solely on the omission of documentary evidence will also be deemed admitted.

Walowski, as a salaried manager at the Distribution Center, received an annual performance review, which set goals and objectives for the upcoming performance period. As an Area Manager, Walowski also generally received written mid-year performance feedback. The Distribution Center generally used a step process, also called "coaching" to notify individuals of instances when their conduct or performance was below expectations. Walowski used the coaching with associates who reported to him and managers used the Coaching process with Walowski. The Distribution Center also used a Performance Tracking Log (PTL) policy, which included a process of occurrences and steps for performance management. For hourly associates, a step would generally run its course in six months. During Walowski's employment, the Distribution Center also used a performance management process for managers, which included a First Step, a Second Step, and a Third Step, then termination.

On March 22, 2005, Walowski's supervisor Michelle Bowden and General Manager Curt Andersen provided him with an annual evaluation for review period ending January 2005. Walowski received a 3.2 rating, which is considered a "valued performance." Communication was identified as an area of opportunity for Walowski. Walowski signed the evaluation and agreed that it was accurate.

On September 17, 2005, Bowden gave Walowski a mid-year performance evaluation. Walowski received a "valued performance" rating. Communication was identified as an area of opportunity for Walowski. Walowski signed the evaluation and agreed that it was accurate.

On April 5, 2006, Bowden and Assistant Manager Mike Kruse gave Walowski an annual performance evaluation. Walowski received a 3.33 rating, which is considered a "valued performance." Areas of opportunity for Walowski included "needs to be more open to change, effective communication, weekly pallet audits, one-minute observations, prioritizing as well as

following through on tasks, [and] learn to ask for help when needed." Walowski signed the evaluation and agreed that it was accurate.

On April 11, 2007, Walowski's supervisor Tony Monti and Kruse gave Walowski an annual evaluation for review period February 1, 2006 through January 13, 2007. Walowski received a 3.47 rating, which is considered a "valued performance." Areas of opportunity included "delegation, willingness to change, consistency in housekeeping, [and] improve on research and auditing processes." Walowski signed the evaluation and agreed that it was accurate.

In September 2007, Monti gave Walowski a mid-year evaluation. Walowski received the ranking "valued performer". Areas of opportunity included of focusing "on reducing his level of frustration, through open communication and compromise." Walowski was also directed to "strive to ensure billing integrity by conducting breakpack audits nightly without fail" and "needs to work improve shift to shift issues by working closely with fellow PUT managers to resolve any issues." Walowski signed the evaluation and agreed that it was accurate.

On March 20, 2008, Monti and Kruse gave Walowski an annual performance evaluation. Walowski received a 3.60 rating, which is considered a "valued performance." Areas of opportunity included, "Jason needs to focus on reducing his level of frustration when dealing with difficult situations, needs to drive billing integrity by ensuring that we are conducting breakpack audits daily without fail, strive to lower cost through process and procedures, [and] safety performance." The evaluation also stated "Jason needs to continue to improve on remaining calm in stressful situations. Always look for solutions to an issue before seeking to lay blame." Walowski signed the evaluation and agreed that it was accurate.

On July 25, 2008, Manager Paul Robinson and Human Resources Manager Jim Perona gave Walowski a performance management step or "coaching" after Walowski confronted another co-worker about slapping his daughter. Walowski testified in his deposition that this incident occurred.

On August 29, 2008, Robinson gave Walowski a mid-year evaluation. Walowski received the ranking "valued performer". Areas of opportunity included "safe work habits" and "make sound decision by analyzing each situation before acting." Always look for solutions to an issue before seeking to lay blame." Walowski signed the evaluation and agreed that it was accurate.

On April 3, 2009, Robinson gave Walowski a performance evaluation for review period ending on January 31, 2009. Walowski received a 3.41 rating, which is considered a "valued performance." The evaluation stated that Walowski needed to "work on anger management. Handle each situation with a level head and make wise decisions bases [sic] on the facts. Always maintain respect for the individual in every situation." Walowski testified that he believes these comments were made due to the July 25, 2008 incident with his co-worker and did not believe that he needed to work on his anger management and respect for individuals. However, Walowski conceded "it was may be the wrong time, wrong place." Walowski also served a suspension during this timeframe because his ex-girlfriend, who also worked at Wal-Mart, filed domestic violence charges against him. The charges were later dropped and Walowski returned back to work. Walowski felt the suspension played a role in his score. His area of opportunities included "Associate development, decision making, personal development, [and] housekeeping." Walowski signed the evaluation and agreed that it was accurate, with exceptions stated above.

In March 2009, Loren Bowman ("Bowman") became Walowski's supervisor. On April 29, 2009, Bowman issued Walowski a written performance management coaching for safety because he did not report a workplace injury in a timely manner. Walowski injured his shoulder on April 17, 2009 and failed to report his injury to Bowman before the end of his shift. Walowski told Bowman that he was very upset that he received a step because the only reason he did not report the injury because he could not find Bowman.

In April 2009, Bowman issued Walowski an occurrence for failure to complete his Risk Control Topic in a timely manner. In May 2009, Bowman issued Walowski an occurrence for failure to complete his safety walks in a timely manner. Also in May 2009, Bowman noted that Walowski completed his store calls, but did not submit them in a timely manner. In August 2009, Bowman noted Walowski failed to turn in his safety walks. In September 2009, Bowman noted that Walowski failed to complete his pallet audits in a timely manner.

On September 4, 2009, Bowman gave Walowski a mid-year performance evaluation. Walowski received an "On Target" rating. Bowman noted that Walowski was "a gifted manager in his ability to understand the operation of an area and developing ideas to improve the performance of that area. He does not generally achieve those improvements due to lack of follow-through." Bowman also noted "Jason should seek the advice and counsel of his managers and peers when confronting difficult situations. He needs to understand he is not operating in a vacuum. Jason should work to increase his personal ownership of all opportunities within his area of responsibility. Housekeeping in Non/Con has improved but is still below standard." Walowski signed the evaluation and agreed that it was accurate.

On October 30, 2009, Wal-Mart managers issued Walowski a performance management coaching Step One for safety because he failed to complete safety-related administrative

requirements and failed to attend a mandatory safety-training meeting on October 26, 2009. Walowski signed the evaluation and agreed that it was accurate.

In November 2009, Walowski had a conversation with Associates Michelle Waite and Eva Winn about Bowman smelling of alcohol. Following his conversation with the two associates, Walowski reported to Kruse that Bowman had been coming to work smelling of alcohol. Walowski had never observed Bowman drinking at work and no one had ever made a report to Walowski that they had seen Bowman drinking at work. Kruse observed Bowman at morning start-up meetings, once a week for approximately four to five weeks, but was unable to substantiate what Walowski has reported. Walowski never reported his concern to Anderson; nor did he tell Bowman that he made a report.

On December 2, 2009, Wal-Mart managers issued Walowski a Step Two written performance management coaching because he cut in front of his ex-girlfriend, an hourly associate at Wal-Mart, at the battery changing statement. Walowski signed the coaching and included a written statement that said, "I understand the wrong choice that I made leaving myself 'open' for a misunderstanding. I will take further action in the future to ensure that a perception isn't made that could lead to a bigger issue than what it is." Walowski testified Bowman did not investigate the incidents that led up to the December 2, 2009 Step Two Coaching.

In February 2010, Bowman informed Walowski that he would receive a below-expectations evaluation. Walowski was agitated, annoyed, and angry. Walowski agreed that he was probably disrespectful and may have used profanity.

On February 26, 2010, Wal-Mart managers issued a Step Three performance coaching to Walowski. Walowski received the coaching because he made derogatory and disrespectful comments about his peers, disrupted a manager meeting, and made a comment that indicated a

6

lack of support for the Open Door policy. The written coaching stated, "Jason has been openly agitated and disrespectful in interactions with others around him. His behavior has not been to level of professionalism and leadership that is expected of a Wal-Mart manager."

In his initial action plan, Walowski stated, "I will do my best to get rid of this Step III and pursue other options within the company. However, I do not agree with the contents of this Step III." Walowski testified they Mike Kruse did not agree with the initial action plan and asked Walowski to write another action plan. Walowski supplemented his action plan by writing, " In the future, I will try to take criticisme [sic] and talk [sic] my point of view clearly and refrain from letting my disappointment show when I don't agree with something I'm going to walk away and come back and talk about it later."

In March 2010, Walowski was late for work. Manager John Rosculp, who was filling in for Bowman, noticed that because Walowski was late he was not getting his staffing reports to QA in a timely manner. Rosculp noted this in a memorandum

On April 13, 2010, Anderson and Bowman gave Walowski his annual evaluation for evaluation period February 1, 2009 through January 31, 2010. Walowski received a 2.92 rating, which is considered a "below expectations." The evaluation stated that Walowski "demonstrated issues with controlling his anger", "does not acknowledge developmental opportunities and therefore is unable to correct the behaviors." Walowski was upset about his evaluation and reacted poorly because it was his first below expectation rating in his career and he was afraid he was going to lose his job.

On April 14, 2010, Walowski failed to follow the required safety check procedures before operating mechanical equipment.

On May 11, 2010, Bowman and Anderson gave Walowski a follow up evaluation and provided him additional feedback to assist Walowski in improving his performance. Walowksi stated, "I'm going to ensure that I am not in the position where there is the potential for interpretation. I'm implementing a new strategy to ensure monthly administrative commitments are completed. I'm going to put a personal goal to have those completed within the first week of each month. I will track this myself to ensure they are completed. I will put forth an effort to explain my outlook on issues better and try to listen more carefully [sic] what others have to say." Walowski acknowledged that his statement was accurate.

In July 2010, Winn and Waite reported to Perona that Bowman had come into work smelling like alcohol. Both Winn and Waite still work for Wal-Mart Distribution Center.

On August 25, 2010, Bowman observed Walowski with his eyes closed and concluded that Walowski was sleeping. In his report, Bowman stated he observed Walowski sleeping for at least five minutes before telling Walowski to wake up. Bowman also wrote Walowski said he was having a bad day and closed his eyes for a minute or two. Bowman reported this to Anderson and Kruse. Kruse spoke to Walowski about the incident. Kruse memorialized his version of the conversation and his summary included that Jason stated he closed his eyes for a minute or two while on the computer. Walowski testified that he told Kruse that he closed his eyes for a long blink, but did not recall saying a minute or two. Walowski testified that he had no reason to believe that the information contained in the memorandum was not Kruse's honest belief.

Anderson decided to terminate Walowski based on a long history of performance and conduct issues. At the time Anderson made the decision to terminate Walowski, he was aware that Wal-Mart had previously fired a manager sleeping in his office. On August 26, 2010, prior

8

to Walowski's termination, Anderson summarized his reasons for his termination decision in a memorandum to Human Resources Director Cynthia Carlson. On August 27, 2010, Kruse and Perona told Walowski he was terminated.

Walowski's Exit Interview indicates that he was terminated because of "misconduct with coaching. The Manager Comments included, "After receiving a decision day in February, on multiples occasions, Jason has failed to get to work on time, has failed to handle area associate concerns timely and on 8/25/10 was asleep at his desk, resulting in termination.

In December 23, 2011, more than a year after Walowski's termination, Wal-Mart employees reported that Bowman smelled like alcohol. Wal-Mart managers investigated, sent Bowman for an alcohol test, and subsequently terminated Bowman's employment.

On March 9, 2012, Walowski filed a Complaint alleging that Wal-Mart retaliated against him by terminating his employment when he reported that Bowman had alcohol on his breath. On June 16, 2014, Wal-Mart moved for summary judgment.

## DISCUSSION

**1. Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial

9

is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex Corp., 106 S. Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S. Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

2. **Analysis**

Wal-Mart argues it is entitled to summary judgment as a matter of law because Walowski failed to establish a causal link between his internal workplace concern and Wal-Mart's decision to terminate his employment; Walowski failed to show that his report of an internal workplace concern implicated a clear mandate of public policy; and Walowksi's common-law retaliatory discharge claim is abrogated by the Illinois Whistleblower Act.

In a diversity case, a federal court applies federal procedural law but state substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). To survive summary judgment on a retaliatory discharge case, a plaintiff must show there is enough evidence in the record to show 1) the employer discharged the employee; 2) in retaliation for the employee's protected activity; and 3) the discharge contravened a clearly mandated public policy. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994); Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d

1307, 1313 (7th Cir. 1989); Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir. 1992).

Plaintiff alleges OSHA's "general duty" clause is the public policy implicated here. OSHA's general duty clause states:

"Each employer:

(1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause or serious physical harm to his employee;

(2) Shall comply with occupation safety and health standards promulgated under this Act.

The crux of Wal-Mart's argument is Walowski was not fired in retaliation for reporting that Bowman smelled of alcohol, but rather for failing to comply with and meet Wal-Mart's policies and expectations. Wal-Mart argues OSHA's general duty clause is too vague to be the source of public policy regarding alcohol testing or alcohol in the workplace because it does not provide employers with enough notice that a policy exist requiring employers to have an alcohol free workplace or test an employee for alcohol when the employer determines that it does not have reasonable suspicion to do so. Walowski responds that Illinois law does not allow an employer to terminate an employee for reporting dangerous activities and that is "axiomatic that alcohol use in the workplace is a recognized safety hazard in employment." In support of this argument, Walowski cites Robinson v. Alter Barge Line, Inc., in which the Seventh Circuit held that "accidents due to drunken and cocaine-snorting seamen" creates a significant safety risk 513 F.3d 668, 673 (7th Cir. 2008). Walowski also references Wal-Mart's Statement of

11

Ethics, which states in part, "Wal-mart is committed to a safe and health of workplace for everyone the use of alcohol and illegal drugs create serious safety risks in our workplace." (Plaintiff SJ Exhibit 2)

Wal-Mart also argues Plaintiff's common law retaliatory discharge claim is preempted by the Illinois Whistleblower Act, 740 ICLS 174/20 (2004). The federal courts are split on this issue and the Illinois Supreme Court has not provided a definitive ruling on this issue. *Compare* Riedlinger v. Hudson Resp. Care, Inc., 478 F. Supp. 2d 1051 (N.D. Ill. 2007) *with* Stiles v. Intl. BioResources, LLC, 726 F. Supp. 2d 944, 953 (N.D. Ill. 2010). The Court finds it not need not make a finding as to whether the OSHA general duty clause establishes a clear mandate of public policy with regards alcohol use in the workplace or whether Plaintiff's common law retaliatory is preempted by the Illinois Whistleblower Act because Walowski's claim fails on the issue of causation.

Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action. See Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (even where the plaintiff's supervisor may not have passed along discriminatory animus to the ultimate decision maker, that animus tainted his assessment of the plaintiff's performance, on which the decision maker did rely). If a manager with a retaliatory motive has some involvement in the decision to terminate an employee, that retaliatory motive, in some circumstances, may be imputed to the company, even if the manager with a retaliatory motive was not the ultimate decision-maker. See Dey v. Colt Constr. Co., 28 F.3d 1446, 1459 (7th Cir. 1994).

Walowski argues the record supports the inference that Anderson and Kruse were covering up Bowman's drinking problem and retaliated against Walowski by treating him differently and ultimately terminated him. Walowski argues that Bowman was aware that Walowski reported him for smelling of alcohol and began targeting him and writing him up. Walowski also relies on the testimony of Michelle Waite and Eva Winn to support his assertion. Both Winn and Waite testified that although Bowman never told them that Walowski reported him, Bowman's behavior changed toward Walowski after the report was made. Walowski asserts that Anderson relied on Bowman's tainted reviews in reaching his decision to terminate his employment.

Accepting Walowski's version of the facts as true, the Court finds that Walowski's claim is still unable to survive summary judgment because it is undisputed that Curt Anderson, not Bowman, was the decision- maker and Anderson alone made the decision to termination Walowksi. Walowski concedes that Anderson did not terminate him for reporting Bowman, but rather for performance issues and that he did not have any facts to suggest that Anderson did not honestly believe the stated reasons for Walowski's termination. When Walowski was asked in his deposition, "is it your contention that Curt Anderson approved the termination because you had reported Loren Bowman smelling of alcohol." Walowski responded, "No." (Walowski Depo. pg. 162-63). Walowski also concedes that any one of the reasons listed on his Exit Interview was a terminable offense because he was out of steps.

Although the Court believes that its inquiry ends here and Wal-Mart is entitled to summary judgment, the Court will briefly address Walowski's performance issues.

Walowski argues that his receipt of his first negative review after reporting Bowman supports an inference that Wal-Mart retaliated against him. A plaintiff may use circumstantial evidence to establish an inference of retaliation. See Sylvester v. SOS Children's Vills. Ill., Inc., 453 F. 3d 900, 902 (7th Cir. 2006). It can include things like suspicious timing, ambiguous statements, behavior towards other employees, and unfavorable treatment compared to similarly situated employees. See Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot., 344 F.3d 680, 689-90 (7th Cir. 2003).

However, when the events that set a disciplinary decision in motion precede the protected activity, courts have found that suspicious timing will not support a retaliation claim. Long v. Teachers' Retirement System of the State of Illinois, 585 F.3d 344, 354 (7th Cir. 2009). The Long Court put it this way: "While a sudden decline in performance evaluations after an employee engages in a protected activity may provide circumstantial evidence of discriminatory intent, a decline in performance before the employee engages in protected activity does not allow for an inference of retaliation." Id. See Ogle v. Wal-Mart Stores East, LP, 2011 U.S. Dist. LEXIS 116212, 27(N.D. Ind. Sept. 23, 2011).

In addition, the Seventh Circuit has consistently held that a short interval between the protected activity and retaliatory conduct can support of inference of retaliatory motive. See Magyar v. Saint Joseph Regional Medical Center, 544 F.3d 766, 772 (7th Cir. 2008) (the court held that a one month gap is short enough to reinforce an inference of retaliation); Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 786-87 & 793 (7th Cir. 2007) (jury could infer intent to retaliate where adverse action occurred just one month after complaints about discrimination); but see Jasmantas v. Subaru-Isuzu Auto.,

Inc., 139 F.3d 1155, 1158 (7th Cir. 1998) (one month gap between protected conduct and discharge insufficient to establish retaliatory link absent other evidence).

The undisputed evidence shows that Walowski received his first below performance rating from Bowman after he reported that Bowman smelled of alcohol. Although Walowski consistently rated as valued performance in all but one of his performance reviews, he also consistently had issues with communication, expressing anger and frustration, interpersonal relationships. These criticisms of Walowski's performance started and escalated well-before Walowsi's alleged protected activity; therefore, no inference of retaliatory motive can be drawn from the fact that Walowski continued to be disciplined after the alleged protected activity. Further there is no suspicious timing between Walowski's alleged protected activity and his termination because the undisputed evidence shows that Wal-Mart terminated Walowski approximately nine months after the alleged protected activity. In addition, Winn and Waite also reported that Bowman smelled of alcohol and they were not retaliated against or terminated.

In sum, we have a young man who began working at Walmart at the age of sixteen that had regular performance evaluations, as set out previously in this Order. Over the course of time these evaluations changed from generally positive to negative. However, even the positive evaluations required some corrective action from Walowski. It is unfortunate that Walowski was unable, or unwilling, to address these matters as it seems he could have had long term employment at Wal-Mart. This is evidenced by the fact that Wal-Mart had grounds to terminate Walowski long before August 2010, but chose to give Walowski numerous opportunities to improve his performance.

## CONCLUSION

For the reasons set forth above, Defendant Wal-Mart's Motion for Summary Judgment [25] is GRANTED. This matter is now terminated, and existing deadlines are vacated.

Entered this 23rd day of December, 2014.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge